IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIO AGOSTO-RAMOS, et al.,

**Plaintiff**

v.

PUERTO RICO TELEPHONE COMPANY,
<u>et al.</u>,

**Defendant(s)s**

CIVIL NO. 08-1554 (JAG)
08-2282

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court are Puerto Rico Telephone Company's Motion for Summary Judgment (Docket No. 46) and National Life Insurance Company's Motion for Summary Judgment (Docket No. 47). For the reasons set forth below both motions are hereby **DENIED**.

### PROCEDURAL BACKGROUND[1]

On November 7, 2008, Jose I. Rivera Pérez ("Plaintiff") filed a complaint against his former employer Puerto Rico Telephone Company ("PRTC"), the Disability Insurance Plan of the Puerto Rico Telephone Company and National Life Insurance

---

[1] The relevant facts are taken from the Report and Recommendation. (Docket No. 79).

Civil. No. 08-2154 (JAG)                                          2

Company ("NLIC") (collectively known as, "Defendants"). (Civil
Case 08-2282, Docket No. 1). He alleges, in essence, that he had
received benefits from PRTC's Long Term Disability Insurance
Plan ("LTD Plan") beginning in 1995 and that said benefits were
unexplainably terminated in January 2007. He brought this civil
action under Art. 502(a)(1)(B) of the Employment Retirement
Income Security Act ("ERISA"), 29 U.S.C. §1132(a)(1)(B), to
recover benefits allegedly due to him under the LTD Plan and to
redress violations of Defendants' fiduciary obligations under
the LTD Plan and ERISA.

       PRTC established its LTD Plan to provide long-term
disability benefits to its employees. (Docket No. 47-2). NALIC,
the insurer of the Plan, issued Group Policy No. LTD-142 (the
"Policy") to PRTC as policyholder. Said policy, which states
that it is subject to ERISA, had an effective date of November
1, 1993. (Docket No. 47-3, p. 1). PRTC also maintains a
Retirement Plan and a Lump-Sum Retirement Plan for its
employees. (Docket No. 46-2).

       The LTD Plan expressly grants NALIC and PRTC, the plan
administrator, complete discretionary authority to interpret and
administer the Plan, make rules, determine eligibility,
coverage, and benefit amounts, resolve claims and disputes, and
review denied claims. The LTD Plan further states that decisions

Civil. No. 08-2154 (JAG)                                      3

made pursuant to such discretionary authority are final and binding on all persons. (PRSUF ¶ 12; Docket No. 64-2, p. 23; Docket No. 72, ¶ c). The Policy's terms and conditions provided that, "[t]his policy may be changed in whole or in part" with the approval of a NALIC officer or registrar made "in writing and endorsed on or attached to this policy." (NSUF, ¶ 15; Docket No. 46-6, p. 28). The Policy also contains a termination clause providing that "[d]isability benefits will cease on the earliest of: […] the date the insured's current earnings exceed 80% of his indexed pre-disability earnings." (PRSUF, ¶ 8).[2]

The Policy provides for a monthly benefit amount payable by NALIC to the disabled insured. (NSUF, ¶ 7). The amount of LTD insurance provided under the Policy amounted to sixty percent of basic monthly earnings,[3] not to exceed a maximum monthly benefit

---

[2] The Policy defines "indexed pre-disability earnings" as "[t]he insured's basic monthly earnings in effect just prior to the date his disability began[,] adjusted on the first anniversary of benefit and each following anniversary by" either seven or eight percent, depending on the adjustment option selected by the employee when applying for the insurance policy. Here the applicable adjustment factor is seven percent. (PRSUF, ¶¶ 9-10; Docket No. 46-6, p. 5; Docket No. 47-3, p. 45). Plaintiff did not properly controvert PRTC's statements of fact on this point (RCMF, ¶ 4), and as Plaintiff has admitted the Policy and the Policy application as genuine (RCMF, ¶ 1 and p. 4; PRSUF, ¶ 7; NSUF, ¶¶ 10, 11, 12), the court deems admitted the Policy's definition of "indexed pre-disability earnings" and the applicable adjustment factor of seven percent.
[3] "Gross monthly benefit" means the insured's benefit amount before any reduction for other income benefits and earnings.

Civil. No. 08-2154 (JAG)                                        4

of $4,800. (Id., ¶ 10). The monthly benefit under the Policy was determined by deducting "other income benefits" listed under the Policy from the lesser of $4,800 or sixty percent of the insured's basic monthly earnings. (Id., ¶¶ 11, 13). "Other income benefits" listed under the Policy include Social Security disability or retirement benefits as well as any disability and/or retirement benefits provided through the employer's retirement plan. (Id., ¶ 14).

The Plan provides disabled employees a minimum monthly LTD benefit. (PRSUF, ¶ 13). The Policy's original minimum monthly benefit terms provided that "[t]he benefit payable will never be less than $100.00 or 10% of the gross monthly benefit, whichever is greater." (NSUF, ¶ 5). By amendment ("Amendment No. 2") effective November 1, 1993 (the same date as the Plan's effective date), the minimum monthly benefit term was changed to provide that "[t]he benefit payable will be the [*sic*] 30% of the basic monthly earnings" at the time of disability. (Id., ¶ 6). The amendment specified that "[t]he policy's terms and provisions will apply other than as stated in this amendment."

---

"Basic Monthly Earnings" means the insured's monthly rate of earnings from the employer in effect just prior to the date disability begins, excluding overtime pay, commissions, bonuses, and any other extra compensation. (NSUF, ¶¶ 7, 8, 9, 12).

Civil. No. 08-2154 (JAG)                                           5

(Id.; PRSUF, ¶ 17-18; Docket No. 60-2, Plaintiff's Counterstatement of Material Facts ["RCMF"], ¶ 7).

In March 2002, PRTC and NALIC executed another amendment to the Policy through Amendment No. 10, which was effective retroactively to November 1, 1993. (NSUF, ¶ 16; PRSUF, ¶ 22). Amendment No. 10 was adopted specifically to modify the minimum monthly LTD Plan benefits for employees who were also receiving retirement benefits from PRTC. (PRSUF, ¶ 19). Amendment No. 10 provides, *inter alia*:

> With respect to persons receiving retirement benefits from the Policyholder, the Minimum Monthly Benefits payable will be between 0% to a maximum of 30% of basic monthly earnings in a way that the integration of all benefits, including retirement benefits, will not exceed 60% of the basic monthly earnings. (NSUF ¶ 17; PRSUF, ¶ 20).

Amendment No. 10 also provided that "[t]he policy's terms and provisions will apply other than as stated in this amendment." (Docket No. 47-3, p. 34). Thus, under Amendment 10, an employee would continue to receive LTD Plan benefits during retirement only if the employee's other benefits, including Social Security Disability Insurance ("SSDI") and retirement benefits, did not equal or exceed sixty percent of his basic monthly salary. (PRSUF, ¶ 21).

Plaintiff, a PRTC employee since 1973, participated in the Plan. (NSUF, ¶¶ 31-2;PRSUF, ¶ 2). Due to alleged disabilities, he stopped working at PRTC in October 1995. (PRSUF, ¶ 3). His basic monthly earnings were either $3,362.75 or $3,160.50 at the time his disability began.[4] (NSUF, ¶ 37; PRSUF, ¶ 6). On May 17, 1997, Plaintiff started to receive LTD benefits under the Plan in the amount of $1,008.83 per month. (NSUF, ¶ 34; PRSUF, ¶¶ 4, 15). In 1997, he began receiving monthly SSDI benefits of $1,100 per month. (PRSUF, ¶¶ 33, 35). In September 2006, Plaintiff elected to receive early retirement benefits under PRTC's Retirement Plan of $1,692.71 per month, effective January 1, 2007. (NSUF, ¶¶ 33, 38; PRSUF, ¶¶ 26, 28, 30). In January 2007, PRTC, through its affiliate, Insurance Adjusters and Appraisers, informed NALIC of this election and instructed NALIC to "proceed according to the terms of the policy." (NSUF, ¶ 40).

At the time his monthly retirement benefits went into effect, Plaintiff's monthly SSDI benefits had risen to either $1,140 or $1,355.7 (NSUF, ¶ 39; PRSUF, ¶ 35). After receiving an

---

[4]Although PRTC's and NALIC's respective Statements of Uncontested Facts allege different amounts, Plaintiff admitted both statements and did not contest the statements' respective unauthenticated supporting exhibits. (Docket No. 60-2, p. 1, 4). It appears from these exhibits that NALIC used the higher amount in arriving at its benefits reduction decision. Plaintiff himself stated in his deposition that he could not remember exactly how much he was making, only that it was more than $3,000. (Docket No. 60-4, p. 4).

orientation regarding his options to receive his benefits under the Lump Sum Retirement Plan ("LSR Plan"), Plaintiff chose to receive one lump sum payment of retirement benefits. He received $40,353 in March 2007. (PRSUF, ¶¶ 28, 32). Thus, Rivera's total earnings in March 2007, combining his lump sum retirement benefit, his monthly retirement benefit, his LTD benefit, and his SSDI benefit, amounted to at least $44,194.54.[5] (PRSUF, ¶ 40). This amount constituted more than eighty percent of his indexed pre-disability earnings.[6] (PRSUF, ¶ 42). In addition,

---

[5] While neither party explains why Plaintiff would continue receiving a monthly retirement benefit once he received his lump-sum retirement benefit, Plaintiff admitted PRTC's allegation that he received both benefits in March 2007. (PRSUF, ¶ 40; RCMF, ¶ 1). As noted, the amount of Rivera's SSDI benefit is unclear, but equaled or exceeded $1,140 in March 2007.

[6] As noted, the exact amount of Rivera's basic monthly earnings pre-disability is unclear. While Plaintiff contends that PRTC miscalculated his indexed pre-disability earnings, he does not explain how PRTC erred or what the correct calculation is. (PRSUF, ¶ 42; RCMF, ¶ 11). PRTC also submitted a chart of Rivera's indexed pre-disability earnings. (See PRSUF ¶ 41; Docket No. 46-24). Plaintiff also admitted as genuine the Policy, which provides the method for calculating indexed pre-disability earnings. (See supra note 3). According to the above documents Plaintiff's income of $44,194.54 is greater than eighty percent of 107 percent of either $3,160.50 or $3,362.75 as compounded annually from May 17, 1998 through May 17, 2006. (The seven percent adjustment factor for 2007 does not apply since that factor is applied effective May 17 of each year, i.e., the anniversary of the date Plaintiff began receiving benefits, and this anniversary had not yet occurred in March 2007.) Thus, whatever Rivera's precise monthly salary pre-disability, as of January 2007 his benefits exceeded the maximum monthly earnings allowed under the Policy's termination

Civil. No. 08-2154 (JAG)                                              8

even exclusive of the retirement lump sum, Rivera's combined
monthly benefits (SSDI, LTD, and retirement) exceeded sixty
percent of his pre-disability earnings. (PRSUF, ¶ 43).

In a letter dated December 28, 2007, NALIC notified
Plaintiff that upon the commencement of his PRTC retirement
benefits, his integrated benefits exceeded sixty percent of his
basic monthly earnings, so his minimum monthly LTD benefit had
been reduced to $0 pursuant to the Policy's terms. (NSUF, ¶ 41;
PRSUF, ¶ 45). The letter did not mention that Rivera's benefits
had exceeded eighty percent of his indexed pre-disability
earnings, instead it indicated that his income exceeded 60% of
his basic salary before becoming disabled. (RCMF, ¶¶ 10, 11).
Plaintiff appealed the benefits reduction decision in February
2008, but NALIC denied the appeal in June 2008.[5] (NSUF, ¶¶ 42-3).
Disability Management Services ("DMS"), a third-party
administrator for NALIC, confirmed the denial in July 2008.
(NSUF, ¶ 44).

The parties dispute if Plaintiff received notice of
Amendment 10. Rivera, for his part, testified that he first
_____
provision. (See supra at 3). No material fact issue exists on
this point.

[5]NALIC's letter denying Rivera's appeal reiterated statements in
its original letter that NALIC had overpaid Rivera's benefits
since November 17, 2007, but was not seeking reimbursement of
the excess payment. (Docket Nos. 47-12, 47-13, 47-20, 47-21).

Civil. No. 08-2154 (JAG)                                      9

received notice of Amendment No. 10 when his LTD Plan benefits were cut, that is, at the end of 2007. (Docket No. 60-40, p.8). Plaintiff filed the instant complaint after exhausting all administrative remedies. (PRSUF, ¶ 50; Civil No. 08-2282, Docket No. 1). In his deposition, Plaintiff testified that no one disclosed Amendment No. 10 to him prior to his retirement, and that had he known about it, he would not have retired since, according to him, the pension benefits he receives in early retirement are less than those he would have received had he retired at age 65. (RCMF, ¶ d; Docket No. 71-2, ¶ d). According to Rivera, the benefits document he was provided promised him a minimum of thirty percent of his pre-disability monthly earnings and PRTC was not entitled to change the benefit amount. (Docket No. 60-4, p. 4-5). In the instant action, Plaintiff seeks to have his LTD benefits restored in the amount of thirty percent of his pre-disability basic monthly salary, in addition to declaratory and other relief. (Civil No. 08-2282, Docket No. 1).

Defendants argue that the LTD Plan's terms, including Amendment No. 10, were summarized in a Summary Plan Description ("SPD"). Plaintiff testified in his deposition that he had received a document, whose title he did not know, that indicate PRTC's various types of employment benefit but he did not recall

Civil. No. 08-2154 (JAG)                                      10

whether or not it was a SPD. (RCMF, ¶ d: Docket No. 60-40, p. 5-6: Docket No. 71-2, ¶d).

On August 21, 2009 PRTC and NALIC filed respective Motions for Summary Judgment. (Docket No. 46; Docket No. 47). First, Defendants argue that Plaintiff are not entitled to benefits under the terms of the Plan. Second, that PRTC has the right to amend the Plan and make it effective retroactively. Third, Defendants aver that PRTC has complied with all the requirements imposed by ERISA. According to PRTC, Plaintiff have not adequately alleged nor proved that they have suffered any damages for the alleged noncompliance with ERISA notification requirements. Finally, PRTC submits that Plaintiff are not entitled to an award of costs and attorney's fees inasmuch as their ERISA claims are without merit. Id.

On October 6, 2009, Plaintiff filed his Response in Opposition (Docket No. 60) and on November 2, 2009 NALIC and PRTC replied. (Docket No. 70, Docket No. 71). On November 25, 2009, we denied PRTC's and NALIC's respective Motions for Summary Judgment because the documents submitted by Defendants in support of their motions were not authenticated. (Docket No. 73). However, on December 4, 2009, we granted PRTC's and NALIC's Motions for Reconsideration and referred both motions for summary judgment to a Magistrate Judge for a Report and

Civil. No. 08-2154 (JAG)                                    11

Recommendation. The Magistrate Judge Bruce J. McGiverin issued
his Report and Recommendation on July 16, 2010, recommending
that both motions be denied.

On July 29, 2010, PRTC filed its Objections to the Report
and Recommendation. It avers that the Report and Recommendation
should have found that the termination of Plaintiff's LTD Plan
benefits was proper because Plaintiff's income exceeded 80% of
his indexed pre-disability earnings, which warrants termination
under the Policy even if said basis for termination was not
previously notified. It further argues that the Report and
Recommendation should have recognized that the LTD Plan does not
vest its beneficiaries with rights and that, therefore, it could
amend the plan at any time. Finally, PRTC argues that the Report
and Recommendation erred in finding that there is a genuine
issue of material fact that precludes summary judgment regarding
whether Plaintiff was notified of Amendment No. 10.

On the other hand, NALIC has also objected to the Report
and Recommendation. It states that its Motion for Summary
Judgment effectively shifted the burden of proof upon Plaintiff
and that he failed to show he had vested rights under the
policy. It further argues that Plaintiff failed to establish
that the lack of notice of Amendment No. 10 is in fact a breach

Civil. No. 08-2154 (JAG)                                    12

of ERISA's disclosure obligations that precluded summary

judgment.

### STANDARD OF REVIEW

1. <u>Summary Judgment Standard</u>

"Summary judgment is appropriate when there is no genuine

issue as to any material fact and the moving party is entitled

to judgment as a matter of law based on the pleadings,

depositions, answers to interrogatories, admissions on file, and

any affidavits." <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 175

(1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is

"genuine" if it can be resolved in favor of either party.

<u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir.

2004). A fact is "material" if it has the potential to change

the outcome of the suit under governing law. <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for

summary judgment bears the burden of showing the absence of a

genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 323 (1986). "In prospecting for genuine issues of

material fact, we resolve all conflicts and draw all reasonable

inferences in the nonmovant's favor." <u>Vineberg v. Bissonnette</u>,

548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant,

once a properly supported motion has been presented before a

Civil. No. 08-2154 (JAG)                                        13

Court, the opposing party has the burden of demonstrating that a
trial-worthy issue exists that would warrant this Court's denial
of the motion for summary judgment. Anderson, 477 U.S. at 248.
The opposing party must demonstrate "through submissions of
evidentiary quality, that a trial worthy issue persists."
Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)
(internal citations omitted). Moreover, on issues "where [the
opposing] party bears the burden of proof, it 'must present
definite, competent evidence' from which a reasonable jury could
find in its favor." United States v. Union Bank for Sav. &
Inv.(Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (citing United
States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st
Cir. 1992)). Hence, summary judgment may be appropriate, if the
non-moving party's case rests merely upon "conclusory
allegations, improbable inferences, and unsupported
speculation." Forestier Fradera v. Municipality of Mayaguez, 440
F.3d 17, 21 (1st Cir. 2006) (citing Benoit v. Technical Mfg.
Corp., 331 F.3d 166, 173 (1st Cir. 2003)). It is important to
note that throughout this process, this Court cannot make
credibility determinations, weigh the evidence, and make
legitimate inferences from the facts, as they are jury
functions, not those of a judge. Anderson, 477 U.S. at 255.

Civil. No. 08-2154 (JAG)                                          14

2)  Standard  for  Reviewing  a  Magistrate-Judge's  Report  and
Recommendation

Pursuant  to  28  U.S.C.  §§  636(b)  (1)  (B);  Fed.  R.  Civ.  P.
72(b);  and  Local  Rule  503;  a  District  Court  may  refer
dispositive  motions  to  a  United  States  Magistrate  Judge  for  a
Report  and  Recommendation.  See  Alamo  Rodriguez  v.  Pfizer
Pharmaceuticals,  Inc.,  286  F.Supp.2d  144,  146  (D.P.R.  2003).
The  adversely  affected  party  may  "contest  the  Magistrate  Judge's
report  and  recommendation  by  filing  objections  'within  ten  days
of  being  served'  with  a  copy  of  the  order."  United  States  of
America  v.  Mercado  Pagan,  286  F.Supp.2d  231,  233  (D.P.R.  2003)
(quoting  28  U.S.C.  §§  636(b)(1)).  If  objections  are  timely
filed,  the  District  Judge  shall  "make  a  de  novo  determination  of
those  portions  of  the  report  or  specified  findings  or
recommendation  to  which  [an]  objection  is  made."  Rivera-De-Leon
v.  Maxon  Eng'g  Servs.,  283  F.  Supp.  2d  550,  555  (D.P.R.  2003).
The  Court  can  "accept,  reject,  or  modify,  in  whole  or  in  part,
the  findings  or  recommendations  made  by  the  magistrate,"
however,  if  the  affected  party  fails  to  timely  file  objections,
"the  district  court  can  assume  that  they  have  agreed  to  the
magistrate's  recommendation."  Alamo  Rodriguez,  286  F.Supp.2d  at
146  (quoting  Templeman  v.  Chris  Craft  Corp.,  770  F.2d  245,  247
(1st  Cir.  1985).

**ANALYSIS**

**1. The issue of vested rights**

ERISA was enacted by Congress to regulate two main types of employee benefit plans: welfare benefit plans and retirement benefit plans. The instant case involves a welfare benefit plan. "A welfare benefit plan under ERISA requires five essential constituents: (1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries." Wickman v. Northwestern Nat'l Ins. Co., 908 F. 2d 1077, 1082 (1st Cir. 1990).

Welfare benefit plans are not subject to vesting requirements like other plans regulated by ERISA, such as retirement plans, since they do not create any substantive entitlements. Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995); Balestracci v. NSTAR Elec. & Gas Corp., 449 F.3d 224 (1st Cir. 2006). Therefore, employers and other plan sponsors are

Civil. No. 08-2154 (JAG)                                    16

generally free to adopt, modify or terminate them. Curtiss-Wright Corp. v. Schoonejongen, *supra*.

An employer may contractually cede its freedom to adopt, modify or terminate a plan through bilaterally negotiated contracts and by so doing, vest beneficiaries with benefits that cannot be changed unilaterally. Balestracci v. NSTAR Elec. & Gas Corp., *supra*, 230. "The interpretation of the provisions of an ERISA benefit plan proceeds under federal substantive law, and is guided by "common sense principles of contract interpretation." Id., 231.

In their respective motions PRTC and NALIC posit that summary judgment is appropriate because PRTC was free to adopt, modify, or terminate the LTD Plan at any time. They point specifically to Section V.B.2 of the Policy which states that, "[t]his policy may be changed in whole or in part." (Docket No. 46-6, p. 27. Plaintiff nevertheless contests that he was vested with rights when he requested and obtained benefits and that PRTC has the contractual obligation to honor them. He argues that employers are not free to change the terms of a plan if the language of the Policy vested employees with rights.

To support his position, Plaintiff cited Page 6 of an SPD he alleges was in effect when he requested and obtained the LTD Plan benefits. (Docket 60, ¶5.5). However, the SPD he submitted

Civil. No. 08-2154 (JAG)                                    17

clearly states that it was effective beginning October 23, 1999.
(Docket 64-2). Since the document itself states that it became
effective in 1999, it does not support his assertion that it
vested him with rights at the time he requested and obtained
benefits, which was in 1997. Also, in his deposition Plaintiff
did not identify the SPD he submitted or any other document as
that on which he relied to assert he is vested with rights under
the Policy. (Docket 60-4). This fails to meet his burden of
proof regarding his allegations of vested rights. In order to
defeat PRTC's and NALIC's motions, Plaintiff cannot rely on the
conclusory allegation that he was vested with rights under the
Policy. Therefore, THE Court finds that he did not meet his
burden of proof regarding the vesting of rights and that there
is no issue of material fact in relation to this point.

     The fact that the Court finds that Plaintiff has not met
his burden of proof in demonstrating that he is vested with
rights under the Policy does not automatically warrant summary
judgment in favor of Defendants. It remains to be determined
whether Amendment No. 10, which altered the terms of the Policy,
was properly notified to the Plaintiff.

**2. Amendment No. 10**

Amendment No. 10 was adopted by PRTC and NALIC on March 13,
2002 and was given retroactive effect to November 1, 1993 (the

Civil. No. 08-2154 (JAG)                                    18

LTD Plan's effective date). This amendment reduced the benefits
an employee might receive from 30% of the basic monthly earnings
to between 0% and 30% of the basic monthly earnings, as long as
the integration of all benefits does not exceed 60% of the basic
monthly earnings. (Docket No. 46-6, p. 42).

   As was discussed above, Defendants are correct regarding the
fact that PRTC had the right to amend the Policy and that
Plaintiff does not have vested rights. However, even if plan
administrators are free to adopt, terminate and modify a plan,
this does not mean that plan administrators are free to act
without having to disclose the changes they make. ERISA requires
that all employee benefit plans be established and ruled by a
written document and that plan administrators furnish
participants with a Summary Plan Description. 29 U.S.C. § 1102;
29 U.S.C. § 1024(b).

   "ERISA does not require employers to meet difficult standards
in order to amend a welfare benefit plan, it does, [however],
provide for minimal procedures that must be followed". Coffin v.
Bowater, Inc., 501 F.3d 80, 85-86 (1st Cir. 2007). The
requirements are: (1) the amendment must be in writing; (2) must
be executed by a party authorized to amend the plan; (3) its
language must be clear and alert the parties as to what is being
amended; and, (4) it must meet any other requirement imposed by

Civil. No. 08-2154 (JAG)                                    19

the plan governing documents. Id. Also, amendments must be
notified through a written summary no later than 210 days after
the end of the plan year in which the amendment is adopted. 29
U.S.C. sec. 1024(b)(1).

In this case, the main point of contention is whether
Amendment No. 10 was properly notified to Plaintiff. The Report
and Recommendation found that a genuine issue of material facts
exists regarding this because Plaintiff testified in his
deposition that he did not receive notice of Amendment No. 10
until he received the letter informing him of the termination of
his benefits and because Defendants did not prove they complied
with ERISA's notification requirements.

In its Objections to the Report and Recommendation, PRTC
posits that whether Amendment No. 10 was properly notified is
not an issue of material fact because it does not bear upon the
outcome of the case. Instead, it argues that it should only be
considered for determining whether Plaintiff is entitled to a
substantive remedy, which it denies on the basis that the
damages alleged are not compensable under ERISA because
significant prejudice was not shown. NALIC also objects to the
Report and Recommendation regarding this point. It argues that
Plaintiff did not allege or prove he suffered significant
prejudice from the lack of notice of Amendment No. 10.

Civil. No. 08-2154 (JAG)                                    20

   Contrary to Defendant's allegations, notification of Amendment

No. 10 is a material fact that affects the outcome of this case

because it directly impacts whether a remedy is warranted and

the manner in which it might be furnished. Plaintiff stated

during his deposition that he suffered significant prejudice

because he acted believing that the terms of the LTD Plan

remained the same and that he would continue to receive benefits

under the LTD Plan and because he did not receive notice of the

changes contained in Amendment No. 10. Defendants had the burden

of producing evidence regarding their compliance with ERISA's

notification requirement and the notification of Amendment No.

10 to Plaintiff. Instead, they focused on challenging whether

the prejudice suffered by Plaintiff calls for a substantive

remedy. This, however, does not by itself warrant summary

judgment since the Court may also furnish Plaintiff with

equitable remedies under ERISA. Therefore, the Court finds that

Plaintiff has properly raised an issue regarding the prejudice

stemming from the lack of notice of Amendment No. 10, which

precludes summary judgment.

   **3. The new basis for termination of benefits**

   In its Motion for Summary Judgment PRTC argues that under the

terms of the Policy benefits may be terminated once an

employee's income reaches 80% of his or her indexed pre-

Civil. No. 08-2154 (JAG)                                          21

disability earnings. It alleges that, since Plaintiff's income surpassed 80% of his indexed pre-disability earnings, termination of benefits was done in strict compliance with the Policy. According to PRTC, the fact that said basis for termination was not notified to Plaintiff is immaterial because "[t]here simply was no further action that plaintiff could have taken, nor was there any evidence, additional tests or documents that he could have submitted in order for NALIC to reconsider the termination of his benefits under said provision". (PRTC's Objections to the Report and Recommendation, Docket No. 89, p. 5). PRTC errs.

According to the plain language of ERISA, when an employer denies benefits he or she must "provide adequate notice in writing… setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. §1133. According to the First Circuit, "[t]he need for clear notice pervades the regulatory structure of the Employee Retirement Income Security Act." Bard v. Boston Shipping Ass'n, 471 F.3d 229 (1st Cir. 2006). Every plan governed by ERISA must (1) provide adequate notice in writing setting forth the specific reasons for the denial in a manner calculated to be understood by the participant; (2) and afford a reasonable opportunity for a full and fair review. Id. at 239.

It is not unusual for a plan to attempt to articulate in litigation new basis for the denial of benefits. This practice of holding certain denial basis in reserve rather than communicating them undermines ERISA's regulatory structure. Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 129 (1st Cir. 2004). In order to determine the validity of new basis for denial, the First Circuit has devised a case-by case-approach. Id. at 236.

According to this case-by-case-approach, a Court's power to furnish equitable relief under ERISA, 29 U.S.C. § 1132, allows for an array of possible responses when confronted with an employer who first articulates a basis for termination of benefits during litigation. The remedy must be appropriate to the circumstances of the case and certain factors are to be considered, such as the fact that traditional insurance law places the burden on the insurer to prove the applicability of exclusions and whether the policy's terms themselves require the employer to notify in writing a decision to terminate benefits. The reason the employer has for not offering the new basis for termination earlier and the urgency of the claim could also be considered. Glista, 378 F.3d at 131-132.

According to PRTC's reasoning, adequate notice regarding the termination of benefits under this basis was not necessary

Civil. No. 08-2154 (JAG)                                             23

because there was nothing Plaintiff could have done to demonstrate that termination was not proper. (PRTC's Objections to the Report and Recommendation, Docket No. 89, p. 7). This is contrary to the plain language of ERISA adequate notice requirements and the policy considerations behind them. It is also contrary to traditional insurance law which places the burden on the insurer to prove the applicability of exclusions.

Furthermore, PRTC's justification for not notifying the termination of benefits under this basis before the summary judgment phase of this litigation is unacceptable. If the Court were to validate this argument at this point it would follow that employers would regard compliance with ERISA's adequate notification requirements as optional because they, presumably, would always be correct and there is nothing employees could do to prove them wrong. This Court will not endorse this practice and, therefore, will not allow Defendants to benefit from it.

**CONCLUSION**

For the reasons stated above, this Court **DENIES** PRTC's and NALIC's respective Motions for Summary Judgment. (Docket No. 46; Docket No. 47).


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2010.

Civil. No. 08-2154 (JAG)                                        24


                                S/ Jay A. Garcia-Gregory

                                JAY A. GARCIA-GREGORY

                                United States District Judge